UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN NAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01596-JPH-MPB |
| ) | |
| WEXFORD OF INDIANA, LLC, ) | |
| PAUL TALBOT, ) | |
| ELROD, ) | |
| KNIESER,[1] ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

John Naylor contends that the defendants violated his constitutional rights by retaliating against him and acting with deliberate indifference to his serious medical conditions. The parties have filed cross motions for summary judgment.[2] For the reasons discussed below, the defendants' motion, dkt. [34], is **granted.** Mr. Naylor's motion for summary judgment, dkt. [38], is **denied.**

**I.
Summary Judgment Standard**

---

[1] The **clerk is directed** to update the docket to reflect the correct spelling of defendant Knieser's last name consistent with the caption of this Order. See dkt. 34.

[2] Mr. Naylor filed his motion for summary judgment after the deadline, dkt. 27; dkt. 38, without having sought to extend the dispositive motion deadline or to file a belated motion. Mr. Naylor also argues in his brief that there are numerous disputes of material fact. For these reasons, the Court summarily **denies** Mr. Naylor's motion for summary judgment, dkt. [38], but considers his motion and brief in response to the defendants' motion for summary judgment.

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.
## Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party with respect to each motion for summary judgment. *See Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The following facts are undisputed except where disputes of fact are noted.

Dr. Paul Talbot, Dr. Diane Elrod, and Dr. Martial Knieser were each employed by Wexford and treated Mr. Naylor while he was incarcerated at Pendleton Correctional Facility.

### A. Dr. Talbot

Dr. Talbot examined Mr. Naylor on September 11, 2019, and prescribed Loperamide twice daily at Mr. Naylor's request to treat his previously diagnosed irritable bowel syndrome. Dkt. 36-1 at 1-2; Medical Records, dkt. 36-6 at 1-3. On December 1, 2019, Dr. Talbot left Pendleton to work at Reception Diagnostic Center in Plainfield, Indiana. Talbot Affidavit, dkt 36-1 at 1. Dr. Talbot did not treat Mr. Naylor again before Dr. Talbot moved to the Reception Diagnostic Center. Dkt. 36-1 at 2.

### B. Dr. Elrod

Dr. Elrod provided medical services at Reception Diagnostic Center, but sometimes served as a visiting physician at Pendleton. Elrod Affidavit, dkt. 36-2 at 1.

On October 3, 2019, Mr. Naylor was involved in an altercation with another inmate. Dkt. 36-6 at 4-7. He was examined by medical staff who noted bruising and swelling around Mr. Naylor's right eye and soreness in his right shoulder. He was provided with an ice pack, and he told medical staff he had Tylenol available in his cell. *Id.* He later received x-rays which revealed that his shoulder was normal. *Id.* at 8.

On January 17, 2020, Dr. Elrod examined Mr. Naylor and he complained of shoulder pain. Dkt. 36-2 at 1-1; dkt. 36-6 at 13-15. The range of motion of Mr. Naylor's shoulder was fair. Medical records showed that Mr. Naylor had been prescribed prednisone and shoulder exercises by a nurse practitioner a few months earlier. Based on her review of his medical history and her examination of his shoulder, Dr. Elrod did not believe that Mr. Naylor required additional treatment and encouraged him to continue to do the stretching exercises he had been provided previously. *Id.*

During this visit, Mr. Naylor told Dr. Elrod that he had been stabbed in 2015 but had never been tested for hepatitis. Based on Mr. Naylor's concern, Dr. Elrod ordered a full panel of blood tests. *Id.* Mr. Naylor had active prescriptions for Loperamide and Pepcid at this time. *Id.*

Dr. Elrod left her employment with Wexford approximately one week after this visit and did not provide medical care at Pendleton after that time. Dkt. 36-2 at 2.

Mr. Naylor testified at his deposition that he sued Dr. Elrod because she said she would order bloodwork and physical therapy for him, but he never received those services. Dkt. 36-5 at 5.

**C. Dr. Knieser**

Mr. Naylor saw Dr. Knieser a total of three or four times, dkt. 36-5 at 15. Mr. Naylor testified at his deposition that he first saw Dr. Knieser "some time" after his visit with Dr. Elrod in January 2020. Dkt. 36-5 at 16. Mr. Naylor provides no date or corresponding medical record showing when Dr. Knieser

5

discontinued Mr. Naylor's Pepcid prescription.

The designated evidence shows that in February 2020, Mr. Naylor reported in a chronic care visit that his symptoms were chronic and "are fairly controlled." Dkt. 36-6 at 19. Dr. Knieser further attests that Mr. Naylor's medical records show that his GERD symptoms were mild with no sign of "advanced progression of esophageal abnormalities." Dkt. 36-3 at 3.

Medical records show that Mr. Naylor was prescribed Pepcid at least through May 18, 2020. Dkt. 36-6 at 22. The next available medical record shows that Dr. Knieser provided Mr. Naylor written information about irritable bowel syndrome in September 2020, and that Mr. Naylor was no longer prescribed Pepcid. *Id.* at 23-24.

Mr. Naylor testified at his deposition that he told Dr. Knieser he was vomiting acid, and that, in response, Dr. Knieser should have ordered bloodwork and provided him medication. Dkt. 36-5 at 6. Instead, Dr. Knieser told Mr. Naylor that there was a medication shortage, and he was concerned that Mr. Naylor could develop stomach cancer if he continued the medication. *Id.* at 16.  Mr. Naylor asked if he could try another medication, but Dr. Knieser said no and that Mr. Naylor's GERD "should fix itself" if Mr. Naylor followed the lifestyle recommendations for GERD. *Id.* at 16.

After Wexford's contract to provide medical services in Indiana prisons expired at the end of June 2021, Dr. Knieser did not provide any medical services at Pendleton. Knieser Affidavit, dkt. 36-3 at 1; Ebbitt Affidavit, dkt. 36-4.

### D. Wexford

The only viable claim raised in Mr. Naylor's complaint against Wexford was a claim for injunctive relief in the form of the provision of GERD medication. Dkt. 1; dkt. 11.

### E. Retaliation

Mr. Naylor testified that he believes that Wexford has retaliated against him by denying him bloodwork, physical therapy, and treatment for GERD. Dkt. 36-5 at 7. But as stated above, there is no retaliation claim proceeding against Wexford, only against the individual defendants.

Dr. Talbot affirms that he has never advised medical staff to alter their treatment of Mr. Naylor due to his prior litigation or grievance history. Dkt. 36-1 at 3. Similarly, Dr. Elrod affirms that she was not aware of Mr. Naylor's litigation or grievance history when she treated him. Dkt. 36-2 at 2-3. Dr. Knieser was aware of a settlement in a prior litigation brought by Mr. Naylor. Dkt. 36-3 at 3.

Dr. Talbot, Dr. Elrod, and Dr. Knieser all affirm that they never discussed Mr. Naylor with each other. Dkt. 36-2 at 3; dkt. 36-1 at 3; dkt. 36-3 at 3.

On the other hand, Mr. Naylor testified at his deposition that sometime in 2019, he overheard Dr. Talbot tell Dr. Elrod and Dr. Knieser that Mr. Naylor is litigious. Dkt. 36-5 at 10-11. Mr. Naylor testified that this conversation occurred while the three doctors were in the hallway during medline, when medications are distributed to inmates. *Id.* Mr. Naylor later testified that he might be misremembering which doctors were present for the conversation. *Id.* at 11.

7

### III.
### Discussion

Mr. Naylor was a convicted prisoner at all relevant times so the Eighth Amendment applies to his deliberate indifference claim. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Arnett v. Webster,* 658 F.3d 742, 750–51 (7th Cir. 2011). "[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible...." *Arnett,* 658 F.3d at 754. Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.*

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The "subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Del. Cty. Sheriff,* 700 F.3d 1063, 1073 (7th Cir. 2012).

Mr. Naylor has also raised First Amendment retaliation claims in this case. To prevail on such claims, Mr. Naylor must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged

8

in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

### A. Wexford

The only claim proceeding against Wexford is a claim for injunctive relief. It is undisputed that Wexford no longer provides medical services to Indiana inmates. A claim for injunctive relief becomes moot when "the defendant discontinues the conduct in dispute." *Aslin v. Fin. Indus. Reg. Auth.*, 704 F.3d 475, 477–78 (7th Cir. 2013); *see also Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Mr. Naylor's claim against Wexford is moot, and Wexford is entitled to summary judgment.

### B. Dr. Talbot

Mr. Naylor testified at his deposition that he did not intend to bring claims against Dr. Talbot in this case, dkt. 36-5 at 5-6, yet his unsworn response brief argues that Dr. Talbot subjected him to "downgraded, delayed, or denied medical treatment." Dkt. 39 at 2. Regardless, the designated evidence shows that Dr. Talbot saw and treated Mr. Naylor once during the relevant time frame. Dkt. 36-6 at 1-3. As a result of that encounter, Dr. Talbot provided Mr. Naylor with the prescription he requested. Dkt. 36-6 at 1-3. From these facts, no reasonable juror could conclude that Dr. Talbot disregarded a substantial risk of harm to Mr. Naylor or failed to base his treatment decision on his professional judgment. *Walker*, 940 F.3d at 965 (affirming summary judgment where physician made reasonable medical judgment in response to plaintiff's symptoms). Therefore, Dr. Talbot is entitled to summary judgment.

### C. Dr. Elrod

#### 1. Deliberate Indifference

The designated evidence shows that Dr. Elrod also treated Mr. Naylor on only one occasion. Dr. Elrod examined Mr. Naylor's shoulder and determined that he had a fair range of motion and did not require off-site physical therapy. She advised him to continue with stretching exercises he had been given by a previous provider. Dr. Elrod also ordered that bloodwork be done, but it was not completed.

Dr. Elrod left her employment with Wexford approximately one week after she treated Mr. Naylor.

The Court previously dismissed Mr. Naylor's claim based on the alleged denial of having bloodwork done. Dkt. 11 at 3. Furthermore, the designated medical records confirm that Dr. Elrod *did* order blood work for Mr. Naylor on January 17, 2020 at 1:26 pm. Dkt. 36-6 at 15.

As to treating his shoulder, Mr. Naylor identified no evidence showing that he suffered from a serious medical condition requiring physical therapy, nor that Dr. Elrod knew of, and was deliberately indifferent to, a substantial risk of harm to Mr. Naylor. Mr. Naylor's disagreement with Dr. Elrod's decision not to order off-site physical therapy does not create a disputed issue of material fact because "[d]isagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.". *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Dr. Elrod is therefore entitled to summary judgment on this claim.

### 2. Retaliation

When asked at his deposition whether he believes that Dr. Elrod's treatment decisions were made in retaliation for Mr. Naylor's prior grievances or lawsuits, Mr. Naylor first answered no, and then said he would have to "go over the case with a fine-toothed comb to make an assertion of that nature." Dkt. 36-4 at 7. To the extent Mr. Naylor raises a retaliation claim against Dr. Elrod, there is no evidence in the record that Dr. Elrod's failure to order off-site physical therapy was the result of retaliatory animus against Mr. Naylor.

To succeed on a retaliation claim, a plaintiff must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer*, 870 F.3d at 618. If the plaintiff establishes these elements, "'the burden shifts to the defendant to show that the harm would have occurred anyway.'" *Hawkins v. Mitchell*, 756 F.3d 983, 996 n.10 (7th Cir. 2014) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012) (cleaned up). "And if the defendant does this, 'the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus.'" *Id.* (quoting *Thayer*, 705 F.3d at 252). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer the proffered reason is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

Here, even if Mr. Naylor could establish a prima facie case of retaliation, Dr. Elrod would nonetheless be entitled to summary judgment. Dr. Elrod has designated evidence that her decision to not order off-site physical therapy for Mr. Naylor was based on her review of his medical records—including a recent x-ray that showed that Mr. Naylor's shoulder was normal—and on her physical examination of Mr. Naylor which revealed that his shoulder had fair range of motion. In response, Mr. Naylor has presented no evidence that Dr. Elrod's explanation for her treatment decision was pretextual or that the real reason she did not order physical therapy was retaliatory animus.

The designated evidence shows that Dr. Elrod's decision not to order off-site physical therapy for Mr. Naylor was based on her medical judgment and not on Mr. Naylor's grievance and litigation history. Because no reasonable juror could find that Mr. Naylor litigation and grievance history motivated Dr. Elrod's treatment plan for Mr. Naylor's should, she is entitled to summary judgment.

### D. Dr. Knieser

#### 1. Deliberate Indifference

The designated evidence shows that Mr. Naylor's GERD was chronic, but well managed while he took medication. Dkt. 36-6 at 19. When his Pepcid prescription was discontinued and he asked Dr. Knieser to renew it, Dr. Knieser told him there was a risk of developing stomach cancer with long-term use of the medication. Dkt. 36-5 at 6. Dr. Knieser also testified that that chronic use of H2 blockers, such as Pepcid, and proton pump inhibitors for patients with mild GERD symptoms may cause the development of esophageal abnormalities.

12

Dkt. 36-3 at 2.

Mr. Naylor concedes that avoiding certain foods helps manage his GERD symptoms. Dkt. 36-5 at 15. But he testified that Dr. Knieser refused to give him Pepcid even after he told Dr. Knieser that he was vomiting up acid. *Id.* at 6, 16.

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Construing the evidence in a light most favorable to Mr. Naylor, the Court assumes for summary judgment purposes that there is sufficient evidence to show that Dr. Knieser treated Mr. Naylor for GERD and discontinued his use of Pepcid. Mr. Naylor has not, however, designated evidence that in doing so Dr. Knieser deviated from professional norms.

Indeed, Dr. Knieser's designated evidence shows that Mr. Naylor's GERD symptoms were mild with no sign of "advanced progression of esophageal abnormalities," dkt. 36-3 at 3, and that Mr. Naylor reported in February 2020 that his GERD symptoms were chronic and "are fairly controlled." Dkt. 36-6 at 19. And Mr. Naylor's designated evidence shows that Dr. Knieser told him he discontinued Pepcid because it could lead to stomach cancer. Dkt. 36-5 at 6.

In *Rowe v. Gibson*, the Seventh Circuit reversed summary judgment on Mr. Rowe's claim that medical defendants acted with deliberate indifference when they denied him Zantac for 30 days and when they provided it to him at

13

the wrong times of day. 798 F.3d 622, 628 (7th Cir. 2015). But unlike here, there was no evidence before the court in *Rowe* that the medication at issue could "create health problems if taken daily for a protracted period of time." *Id.* at 625. In contrast, Dr. Knieser discontinued Mr. Naylor's Pepcid because its long-term use created a risk of cancer. Dkt. 36-5 at 6. Moreover, Dr. Knieser instructed Mr. Naylor to continue lifestyle interventions to control his symptoms, *id.* at 16, thus exercising medical judgment.

These facts are more like those considered by the Seventh Circuit in *Lockett v. Bonson*, and other cases in which prison staff discontinue an inmate's medication due to the medication's risks. 937 F.3d 1016, 1024-25 (7th Cir. 2019) ("In such cases, we defer to a medical professional's treatment decision unless no minimally competent professional would have so responded under those circumstances."). Mr. Lockett complained that his prison physician acted with deliberate indifference when she discontinued his oxycodone which had been ordered by an outside physician to treat pain caused by a sickle cell crisis. *Id.* The Seventh Circuit affirmed summary judgment for the prison physician because she had exercised her medical judgment to determine that the risks of prescribing a high dose of oxycodone in light of Mr. Lockett's history of substance abuse outweighed the benefits. *Id*; *see also Kelly v. Ippel*, 2022 WL 500507, *2 (7th Cir. February 18, 2022) (affirming summary judgment on deliberate indifference claim because nurse practitioner's decision to discontinue narcotic pain medication was based on her professional assessment of the medication's risks).

14

In short, Mr. Naylor's disagreement with Dr. Knieser's medical decision does not create a disputed issue of material fact. *Pyles*, 771 F.3d at 409. Therefore, Dr. Knieser is entitled to summary judgment on this claim.

**2. Retaliation**

Mr. Naylor alleged in his complaint that Dr. Knieser denied him Pepcid in retaliation for Mr. Naylor's grievances, tort claims, and litigation against Dr. Knieser's employer, Wexford. Dkt. 1 at 6. When asked at his deposition for the basis of this allegation, Mr. Naylor stated that sometime in 2019 he overheard Dr. Talbot tell Dr. Knieser that Mr. Naylor is litigious. Dkt. 36-5 at 10-11. Mr. Naylor later testified that he might be misremembering which doctors were present for the conversation. *Id.* at 11. This is because Dr. Talbot stopped working at Pendleton on December 1, 2019, and Dr. Knieser did not begin working there until March 2020. Dkt. 36-1 at 1; dkt. 36-3 at 1. Dr. Knieser attests that he was aware of a previous settlement of a medical care case involving Mr. Naylor, but that he did not learn of the case from Dr. Talbot, and it did not impact Dr. Knieser's treatment of Mr. Naylor. Dkt. 36-3 at 3.

Mr. Naylor has not shown that his prior lawsuit against Wexford was at least a motivating factor for Dr. Knieser's alleged decision to discontinue his Pepcid prescription. *Archer*, 870 F.3d at 618. Mr. Naylor has provided no evidence of his prior lawsuit or when it was settled, but even if it was proximate in time to Dr. Knieser's alleged discontinuation of his Pepcid prescription in the spring of 2020, "[t]emporal proximity" on its own "is ordinarily not sufficient to establish causation." *McKinley v. Schoenbeck*, 731 Fed. App'x 511, 514 (7th Cir.

2018). Dr. Knieser is entitled to summary judgment on Mr. Naylor's retaliation claim.

## IV.
## Conclusion

For the reasons discussed above, the plaintiff's motion for summary judgment, dkt. [38], is **denied** and defendants' motion for summary judgment, dkt. [34], is **granted.** Final Judgment consistent with this Order and the Screening Order, dkt. [11], shall now issue.

**SO ORDERED.**

Date: 3/23/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN NAYLOR
128761
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com